UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

BLUELINK MARKETING LLC and
GERALD OWENS,

    Plaintiffs,

   -v.-

DECLAN CARNEY and TAGCADE LLC
a/k/a PUBVANTAGE,

    Defendants.

---------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/15/17

**OPINION & ORDER**

16-CV-7151 (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

    Plaintiffs Bluelink Marketing LLC and Gerald Owens (together,
"Plaintiffs") bring this action against defendants Declan Carney and Tagcade LLC
(together, "Defendants") for breach of contract, fraudulent conveyance, and breach
of fiduciary duty. Presently before the Court are Defendants' motion to enforce a
settlement agreement, the material terms to which the parties agreed following a
settlement conference with the Court earlier this year, and Plaintiffs' cross-motion
to enter a settlement judgment. For the reasons set forth below, Defendants'
motion is granted and Plaintiffs' cross-motion is denied.

## I. BACKGROUND

### A. Plaintiffs' Allegations

    In the Amended Complaint, Plaintiffs allege that Carney agreed to sell his
equity interest in Bluelink Marketing LLC to Owens. Amended Complaint dated
October 11, 2016 ("Am. Compl.") ¶ 7 (Dkt. No. 8). Pursuant to a purchase

1

agreement dated September 4, 2015, "Carney was required to make payment to [Bluelink] for Carney and his wife's proportionate share of the shortfall of [Bluelink's] Deferred Cash Plan (the 'Plan') once that portion of the shortfall was determined by the Plan's Administrator." *Id.* "The Plan Administrator calculated that the Plan shortfall was $279,476.87, and that information was communicated to Carney on April 12, 2016." *Id.* ¶ 8. Carney allegedly breached the purchase agreement when he failed to remit the Plan shortfall to Bluelink. *Id.* ¶¶ 9-17. Plaintiffs, moreover, were unable to terminate the plan due to the shortfall, and thus allegedly "incur[red] additional costs and expenses associated with the continuation of the Plan that would have otherwise been closed." *Id.* ¶¶ 18, 27.

## B. Procedural History

Plaintiffs initiated this action on September 13, 2016 and amended their complaint on October 11, 2016. (Dkt. Nos. 1, 8). Shortly after Defendants answered the Amended Complaint (Dkt. No. 19), the Court held an unsuccessful settlement conference on January 17, 2017 (Dkt. No. 22) and ordered the parties to "continue their settlement discussions over the next 30 days" (Dkt. No. 23). When the parties reached an impasse, the Court held a second settlement conference on March 20, 2017 ("the March conference"). (Dkt. No. 27).

After lengthy negotiations, the parties agreed on the material settlement terms at the March conference. *See* March 20, 2017 Conference Transcript ("Conf. Tr.") at 3-8 (Dkt. No. 29). The Court then placed the parties on the record, and the following colloquy occurred:

2

THE COURT: [I]t's my understanding that the parties have agreed to a settlement. It is further my understanding that the parties plan to memorialize their settlement in a written agreement, but they also wish to place the material terms of the settlement on the record at this time. And the reason they wish to do so is to [e]nsure that in the highly unlikely event that they are unable to memorialize all of the terms of the settlement in a written agreement, they will then have all of the material terms set forth on the record at this time, and upon inquiry from the Court, they will agree to be bound by all of those material terms such that there is a binding and enforceable agreement between the parties.

Mr. Mercer, is that your understanding of how we are proceeding?

MR. JUSTIN MERCER [Plaintiffs' counsel]: Yes, Your Honor.

THE COURT: And Ms. Sedhom, is that your understanding of how we are proceeding?

MS. RANIA SEDHOM [Defendants' counsel]: Yes, Your Honor.

*Id.* at 3-4. Plaintiffs' counsel recited a number of terms on the record, including

the following:

[T]he parties will work cooperatively and in good faith to draft a written settlement agreement within the next 60 days. If a motion to enforce is brought concerning that agreement, whichever party brings that motion and prevails will be entitled to its reasonable attorneys' fees in bringing that motion.

. . . .

Mr. Carney shall agree to indemnify and hold harmless Bluelink and its subsidiaries and affiliated companies and each of their owners, officers, agents and employees, including, but not limited to Owens (defined as Bluelink indemnities) for any claim, loss, costs, penalty, reasonable expense or other damage, including attorneys' fees, suffered by any of the Bluelink indemnities, resulting from or incurred with respect to any legal or governmental proceedings, review or audit related to plan or attributable to Mr. Carney's gross negligence or willful misconduct regarding Bluelink's taxes, including costs of enforcement.

3

*Id.* at 4-7.

Counsel for both parties "agree[d] that the material terms ha[d] been set forth on the record," and Owens and Carney personally confirmed that they understood and agreed to the terms both individually and on behalf of the respective corporate parties. *Id.* at 9-11. Specifically, Owens and Carney "agree[d] to be bound by those terms such that there is a binding and enforceable agreement between" the parties. *Id.* at 10-11. The Court confirmed that the record was complete:

> THE COURT: Anything else either counsel believes we need to put on the record to [e]nsure that we have a binding, enforceable agreement between the parties in the unlikely event that you do not succeed in memorializing your agreement in writing?
>
> MR. MERCER: No, Your Honor.
>
> MS. SEDHOM: No, Your Honor.

*Id.* at 11. Having been apprised of the settlement, Judge Torres, to whom this case was originally assigned, entered a 60-day dismissal order with a May 22, 2017 end date. Dkt. No. 28; *see also* Conf. Tr. at 12.

## C.    Post-Settlement Negotiations

The parties continued to negotiate regarding their written agreement after the March conference. In April 2017, the Plan's actuary informed Plaintiffs that "due to the funding deficiency in the Plan [allegedly caused by Carney], a 'minimum required contribution' ("MRC") in the amount of approximately $34,000 ($17,000 for each year 2016 and 2017) would need to be paid into the Plan prior to termination

4

and distribution." Declaration of Justin Mercer dated June 20, 2017 ("Mercer Dec.") ¶ 3 (Dkt. No. 49). According to Plaintiffs:

> The Plan's actuary further explained that the MRC is not an additional Plan expense, but rather a statutory requirement to add liquid assets to a plan. The Plan's actuary further informed Plaintiffs that failure to pay the MRC would expose all plan sponsors to excise tax liability (from anywhere between 10% and 100% of the MRC itself per unpaid year[)] . . . by the IRS.

*Id.* (citations omitted). Plaintiffs informed Defendants of the MRC and related tax issues on May 4, 2017. *Id.*

On May 19, 2017, Plaintiffs' counsel, Justin Mercer, emailed Defendants' counsel, Ginger Mimier, in response to Defendants' position that Carney would "not pay the MRC to avoid the imposition of the excise tax." Mercer Dec. Ex. B: Pl. May 19, 2017 Email. Mercer stated that although the Plan could be terminated without paying the MRC, the IRS would nonetheless impose an excise tax penalty. *Id.* Mercer further stated that, at the March conference, Defendants agreed to indemnify Bluelink for any losses it "'incurred with respect to[] any legal or governmental proceedings, review, or audit related to Plan.'" *Id.* (quoting Conf. Tr. at 7).

Because Bluelink was jointly and severally liable for any excise taxes related to the Plan, Mercer argued that Bluelink was entitled to indemnification from Defendants for any tax the IRS imposed. Pl. May 19, 2017 Email. Mercer viewed Defendants' refusal to pay either the MRC or the excise taxes "as a repudiation of [Defendants'] agreement [to] fulfill [their] indemnification obligations to Bluelink." *Id.* Mercer informed Mimier that Plaintiffs would "continue to litigate if we cannot

5

agree to resolution that provides reasonable assurances that [Defendants] will fulfill [their] contractual obligations." *Id.*

Mimier responded that Defendants understood the IRS could assess excise taxes if the MRC went unpaid, "but the IRS tax issue has no influence on Plan termination." Mercer Dec. Ex. C: Def. May 19, 2017 Email. Mimier disagreed that the indemnification provision covered the outstanding MRC and refused to place any money in escrow to cover the potential excise taxes. *Id.*

Mimier clarified Defendants' position in a subsequent email: "Declan [Carney] agrees to waive the [MRC] shortfall and agrees to assume the risk of paying the excise tax imposed by the IRS, if any." Mercer Dec. Ex. E: Def. June 1, 2017 Email. Mercer responded: "Thank you for clarifying and confirming that your client will pay the excise tax when due. However, given your client's history of nonpayment and the inevitability of the excise tax, our clients need more than just a promise. Can we at least agree to put the base excise tax of 10% . . . in escrow now?" Mercer Dec. Ex. F: Pl. June 2, 2017 Email. Mimier refused to place any money in escrow, Mercer Dec. Ex. G: Def. June 2, 2017 Email, but stated (contrary to her June 1, 2017 email) that Carney "agrees to pay 50% of the excise tax imposed by the IRS, if any" with "Bluelink to pay the other 50%," Mercer Dec. Ex. I: Def. June 15, 2017 Email.

### D. The Instant Motions

Defendants move to enforce the settlement agreement, and Plaintiffs cross-move to enter a settlement judgment. (Dkt. Nos. 43, 47). Defendants argue that

6

the parties set forth and agreed to all of the agreement's material terms at the settlement conference, and the agreement should be enforced as is. *See generally* Defendants' Memorandum of Law ("Def. Br.") (Dkt. No. 44). Plaintiffs contend that, after the settlement conference, Defendants repudiated the indemnification provision of the parties' agreement. Plaintiffs' Memorandum of Law ("Pl. Br.") at 1-2 (Dkt. No. 48). Plaintiffs thus propose written settlement terms to "clarify" the existing agreement, including: "(i) a clarification that Carney pays excise taxes due to the IRS, . . . and (ii) a provision for dates certain that Defendants draft the additional requisite documents contemplated for plan termination." *Id.* at 1-2. According to Plaintiffs, "[t]hese clarifications are necessary because Carney repudiated his indemnification obligations to pay these taxes. By so ordering the settlement judgment, it accomplishes the goals the parties sought at the settlement conference." *Id.* at 2.[1] Plaintiffs argue that "the Court has authority to interpret the indemnification provision by clarifying same within the settlement judgment." *Id.* at 6.

## II. DISCUSSION

### A. The Court's Jurisdiction

After the March conference, Judge Torres issued an order stating that this action was "dismissed and discontinued without costs and without prejudice to the right to reopen the action within sixty (60) days if the settlement is not consummated." (Dkt. No. 28). When the parties disagreed over the indemnification

---

[1] Plaintiffs inconsistently refer to Defendants' statements as a "repudiation" at one point, Pl. Br. at 2, and as an "anticipatory repudiation" at another, Pl. Br. at 6.

7

provision, Defendants filed a "Motion to Enforce Settlement Agreement" on May 22, 2017, the final day of the 60-day period. (Dkt. No. 31); *see also* Conf. Tr. at 12. On May 24, 2017, Judge Torres issued an order questioning whether the Court had subject matter jurisdiction to enforce the settlement agreement because "[t]he dismissal order neither expressly retained jurisdiction over the settlement agreement nor incorporated the terms of the agreement," citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381-82 (1994), and *Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015). (Dkt. No. 38).[2] In the same order, Judge Torres extended the deadline by which the parties could move to re-open the case to July 10, 2017, and ordered the parties to advise the Court by June 2, 2017 how they wished to proceed regarding the settlement. (Dkt. No. 38).

On June 2, 2017, Plaintiffs sought "to reopen this action to be restored to the active docket." (Dkt. No. 39). On June 6, 2017, Judge Torres reopened the case and struck the parties' motions; the parties were directed to resubmit their motions "addressing any jurisdictional and substantive issues" by June 20, 2017. (Dkt. No. 41). While neither party contests the Court's jurisdiction, Defendants and Plaintiffs filed revised motions on June 6, 2017 and June 20, 2017, respectively. (Dkt. Nos. 43, 47). In the interim, the parties consented to decision of these motions by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. No. 46).

---

[2] *See Hendrickson*, 791 F.3d at 358 ("[T]o retain ancillary jurisdiction over enforcement of a settlement agreement, *Kokkonen* prescribes that a district court's order of dismissal must either (1) expressly retain jurisdiction over the settlement agreement, or (2) incorporate the terms of the settlement agreement in the order.").

8

The Court finds no jurisdictional impediment to proceeding here, as this case is distinguishable from *Kokkonen* and *Hendrickson*. In those cases, a party moved to enforce a settlement agreement after the underlying action had been dismissed, and neither party first moved to reopen the case.[3] The issue accordingly was whether the district court had retained jurisdiction over the settlement, or incorporated the settlement terms into its dismissal order, such that ancillary jurisdiction was preserved. Here, in contrast, although the parties initially filed motions after the case had been dismissed, Judge Torres struck those motions and reopened the case at Plaintiffs' request, after which the motions were re-submitted. Thus, because the case was open when the pending motions were filed, the Court finds that it has jurisdiction over this dispute. *See, e.g., BCM Dev., LLC v. Oprandy*, 490 F. App'x 409, 409 (2d Cir. 2013) ("'A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it.'") (citation omitted); *T St. Dev., LLC v. Dereje & Dereje*, 586 F.3d 6, 11 (D.C. Cir. 2009) ("[W]here, as in *Kokkonen*, a party seeks to enforce a settlement agreement after the district court has dismissed the case, the district court lacks jurisdiction over the agreement unless the court either incorporated the agreement's terms into the dismissal order or expressly retained jurisdiction over

---

[3] *See Kokkonen*, 511 U.S. at 376-77 ("In April 1992, . . . the parties executed a Stipulation and Order of Dismissal with Prejudice, dismissing the complaint and cross-complaint. On April 13, the District Judge signed the Stipulation and Order under the notation 'It is so ordered.' . . . Thereafter the parties disagreed on petitioner's obligation to return certain files to respondent under the settlement agreement. On May 21, respondent moved in the District Court to enforce the agreement. The District Court entered an enforcement order, asserting an 'inherent power' to do so."); *Hendrickson*, 791 F.3d at 357 ("The matter returned to federal court in October 2013, almost 30 years after the parties' settlement, when Plaintiffs filed a motion in the Western District [of New York], on the same docket, styled a 'Motion to Enforce a Compromise Settlement.'").

9

the agreement. If, however, a party seeks to enforce a settlement while the underlying suit remains pending, then the district court has jurisdiction to enforce the related settlement.").

## B. Standard of Review

"Settlement agreements are contracts and must therefore be construed according to general principles of contract law. If a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." *Torres v. Walker*, 356 F.3d 238, 245 (2d Cir. 2004) (citations and internal quotations omitted); *see also, e.g., Lenington v. Kachkar*, 633 F. App'x 59, 60 (2d Cir. 2016); *Scheinmann v. Dykstra*, No. 16-CV-5446 (AJP), 2017 WL 1422972, at *2 (S.D.N.Y. Apr. 21, 2017).[4]

"The party seeking to enforce a purported settlement agreement bears the burden of proving that such a binding and enforceable agreement exists. . . . As with any contract, a settlement agreement is binding only if there is an offer, acceptance, consideration, mutual assent, and intent to be bound." *Grgurev v. Licul*, No. 1:15-CV-9805 (GHW), 2016 WL 6652741, at *3 (S.D.N.Y. Nov. 10, 2016); *see also, e.g., Doe v. Kogut*, No. 15-CV-07726 (SN), 2017 WL 1287144, at *4 (S.D.N.Y. Apr. 6, 2017) ("The lynchpin of any settlement agreement is the mutual

---

[4] The Court has both diversity and federal question jurisdiction over this action under 28 U.S.C. §§ 1331, 1332. Am. Compl. ¶ 5. However, no choice of law analysis is necessary here because there is "no material difference between the applicable state law or federal common law standard" regarding the enforceability of a settlement agreement. *Kaczmarcysk v. Dutton*, 414 F. App'x 354, 355 (2d Cir. 2011).

10

assent of parties to the terms of the settlement."). Thus, absent a party's expressed intent not to be bound without a signed writing, oral settlement agreements are enforceable. *See, e.g., Powell v. Omnicom*, 497 F.3d 124, 129 (2d Cir. 2007) ("Parties may enter into a binding contract orally, and the intention to commit an agreement to writing, standing alone, will not prevent contract formation."); *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985) ("Under New York law, parties are free to enter into a binding contract without memorializing their agreement in a fully executed document. This freedom to contract orally remains even if the parties contemplate a writing to evidence their agreement. In such a case, the mere intention to commit the agreement to writing will not prevent contract formation prior to execution."); *Klein v. Frenkel*, No. 14-CV-2719 (ADS) (AYS), 2017 WL 2371173, at *3 (E.D.N.Y. May 30, 2017) ("[O]ral agreements are binding and enforceable absent a clear expression of the parties' intent to be bound only by a writing.") (internal quotations omitted).

Courts in the Second Circuit apply the four factors outlined in *Winston*, 777 F.2d at 80, to "help determine whether the parties intended to be bound in the absence of a document executed by both sides":

(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Id.; accord, e.g., CAC Grp. Inc. v. Maxim Grp. LLC*, 523 F. App'x 802, 803-04 (2d Cir. 2013); *In Re: Lehman Bros. Holdings Inc.*, No. 17-CV-03424 (DLC), 2017 WL

3278933, at *2 (S.D.N.Y. Aug. 2, 2017); *Elizabeth St. Inc. v. 217 Elizabeth St. Corp.*, 276 A.D.2d 295, 296 (1st Dep't 2000) (approving use of *Winston* factors). "No single factor is decisive, but each provides significant guidance." *Powell*, 497 F.3d at 129 (citation omitted).

## C. Analysis

The Court considers each *Winston* factor in turn to determine whether a binding, oral agreement was set out at the March settlement conference.

### 1. Express Reservation

"[I]f either party communicates an intent not to be bound until he achieves a fully executed document, no amount of negotiation or oral agreement to specific terms will result in the formation of a binding contract." *Winston*, 777 F.2d at 80; *see also, e.g., R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 75 (2d Cir. 1984) ("[W]hen a party gives forthright, reasonable signals that it means to be bound only by a written agreement, courts should not frustrate that intent."). This factor "is the most important." *Scheinmann*, 2017 WL 1422972, at *4 (citation omitted); *accord, e.g., Kaczmarcysk*, 414 F. App'x at 355 ("While [n]o single factor is decisive, where there is a writing between the parties showing that [one party] did not intend to be bound . . . a court need look no further than the first factor.") (citations and quotations omitted); *Goldstein v. Solucorp Indus., Ltd.*, No. 11-CV-6227 (PED), 2017 WL 1078739, at *6 (S.D.N.Y. Feb. 10, 2017) (Intent not to be bound "is the most heavily weighed *Winston* factor."), *R. & R. adopted*, 2017 WL 1067792 (S.D.N.Y. Mar. 21, 2017); *McLeod v. Post Graduate Ctr. for Mental Health*, No. 14-CV-10041

(JCF), 2016 WL 6126014, at *2 (S.D.N.Y. Sept. 30, 2016) ("The first and most important factor is the parties' manifestation of an intent to be bound."), *R. & R. adopted*, 2016 WL 6126383 (S.D.N.Y. Oct. 19, 2016).

At the March conference, neither party indicated any express or implied intent to be bound only by a fully executed writing. In fact, quite the opposite. The Court stated at the beginning of the conference that, although "the parties plan[ned] to memorialize their settlement in a written agreement," "they also wish[ed] to place the material terms of the settlement on the record . . . to [e]nsure that in the highly unlikely event that they are unable to memorialize all of the terms of the settlement in a written agreement, they will then have all of the material terms set forth on the record at this time, and upon inquiry from the Court, they will agree to be bound by all of those material terms *such that there is a binding and enforceable agreement between the parties*." Conf. Tr. at 3-4 (emphasis added). The parties agreed and recited the material terms on the record, *id.* at 4-8, after which Owens and Carney confirmed that they understood and agreed to the terms both individually and on behalf of the respective corporate parties, *id.* at 9-11. Specifically, Owens and Carney "agree[d] to be bound by those terms such that there is a binding and enforceable agreement between" the parties. *Id.* at 10-11. The Court then confirmed with counsel that the record was complete on this point. *Id.* at 11.[5]

---

[5] Indeed, Plaintiffs' counsel, well understanding that all material terms needed to be put on the record, read verbatim an "entire indemnification provision." Conf. Tr. at 6-7. He plainly would not have done so had he thought a written agreement alone would be binding in this case.

13

This colloquy, conducted in open court with counsel and parties present, is compelling evidence that the parties intended their oral agreement to be binding, whether or not it was reduced to writing at a later date.[6] The first *Winston* factor thus weighs heavily in favor of enforcement.

## 2. Partial Performance

"A second factor for consideration is whether one party has partially performed, and that performance has been accepted by the party disclaiming the existence of an agreement." *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 325 (2d Cir. 1997). "[P]artial performance is an unmistakable signal that one party believes there is a contract; and the party who accepts performance signals, by that act, that it also understands a contract to be in effect." *R.G. Grp., Inc.*, 751 F.2d at 75-76.

Defendants claim that they "engaged in partial performance of the agreement by paying the first installment payment into the escrow account for Defendants' counsel, as agreed to at the settlement conference. These funds remain in the escrow account." Def. Br. at 5; *see* Conf. Tr. at 5. Plaintiffs did not "accept" Defendants' partial performance, however, which involved the transfer of funds

---

[6] *See, e.g., McCray v. Cty. of Orange*, 688 F. App'x 74, 76 (2d Cir. 2017) ("Here, an independent review of the record and relevant case law reveals that the district court properly ruled that the parties intended to be bound by the oral agreement reached in open court."); *Doe*, 2017 WL 1287144, at *5 ("The parties neither impliedly nor expressly reserved the right not to be bound at the October 26, 2016 settlement conference. . . . I stated explicitly, 'I want to make sure . . . that each party understands that he or she will be entering into a binding and enforceable oral agreement today, which means that we are entering into a contract today.' Neither party's counsel reserved the right to modify the written settlement language at a later date or argued that a clause allowing for revocation should be added. In addition, neither party made any objection after I read out the material terms. Indeed, both parties affirmed their understanding of the material terms.") (record citation omitted).

14

between Carney and his counsel. While it is true that, in taking this step, Defendants complied with the agreement set forth on the record, the Court finds that this factor at most slightly favors Defendants, but is essentially neutral given Plaintiffs' lack of acceptance.

## 3. Agreement on Terms

The third factor requires the Court to consider whether the parties agreed on all of the material terms. *See, e.g., Doe*, 2017 WL 1287144, at *7 ("The third *Winston* factor examines whether the parties agreed on all material terms."); *Grgurev*, 2016 WL 6652741, at *6 ("[C]ourts analyzing this factor focus on whether the parties reached agreement with respect to all *material* terms.") (emphasis in original).

Here, the parties recited, and agreed to, all of the material terms on the record. Moreover, the Court inquired whether there was "[a]nything else either counsel believes we need to put on the record to insure that we have a binding, enforceable agreement between the parties in the unlikely event that you do not succeed in memorializing your agreement in writing," to which counsel for both parties responded that there was not. Conf. Tr. at 11.

In their motion, Plaintiffs argue for additional terms, or, more precisely, the "clarification" of existing terms, because Carney allegedly repudiated (or anticipatorily repudiated) certain portions of the settlement agreement:

The only distinctions in Plaintiffs' proposed settlement judgment and the draft, written settlement agreement circulated between the parties are (i) a clarification that Carney pays excise taxes due to the IRS, to the IRS and (ii) a provision for dates certain that Defendants draft the

15

additional requisite documents contemplated for plan termination. These clarifications are necessary because Carney repudiated his indemnification obligations to pay these taxes.

Pl. Br. at 1; *see also id.* at 7 ("By so-ordering the proposed settlement judgment, it accomplishes the goals the parties sought at the settlement conference by implementing the post-conference written, negotiated settlement agreement—and clarifying that Carney is to pay those taxes he already agreed to pay.").

Plaintiffs do not expressly argue that the agreement placed on the record is incomplete, only that "Defendants' statements amounted to an anticipatory repudiation of the indemnification clause." *Id.* at 7. But if Plaintiffs believe that Defendants have repudiated the indemnification clause or any other portion of the settlement agreement, their remedy is to bring a breach of contract action, not to add terms to an already complete agreement. Put another way, Plaintiffs want the Court to go beyond the express terms of the agreement and add new terms in a settlement judgment. This the Court cannot do.

Nor does the absence of "a provision for dates certain" for Defendants to "draft the additional requisite documents contemplated for plan termination" render the agreement incomplete. Pl. Br. at 2; *Cf. Muze, Inc. v. Digital On Demand, Inc.*, 356 F.3d 492, 495 (2d Cir. 2004) ("The omission of a time limit for a permitted or required task normally means that the task is to be performed within a reasonable time."); *Blum v. Spaha Capital Mgmt., LLC*, 44 F. Supp. 3d 482, 493 (S.D.N.Y. 2014) ("Under New York law, '[w]here there is no express provision in a contract relating to time of performance, a reasonable time is implied.'") (quoting

*Lake Steel Erection, Inc.* v. *Egan*, 61 A.D.2d 1125, 1126 (4th Dep't 1978)). Plaintiffs,

moreover, do not persuasively argue that the agreement is otherwise unenforceable

absent this provision. *See, e.g., Am. Home Assur. Co. v. Cent. Transp. Int'l, Inc.*, 354

F. App'x 499, 501 (2d Cir. 2009) ("Defendant also argues that the settlement

agreement was not binding because all of the terms were not agreed to.

Specifically, it identifies a number of terms that it ordinarily requires as part of

settlement agreements, including a release of related claims, indemnification, and a

choice of law provision. It is undisputed, however, that McDermott and Rigelhof

never discussed these terms, much less intended their agreement to be nonbinding

in their absence. Although defendant characterizes these terms as being 'essential'

to the contract, in reality they are simply additional terms that, in hindsight, it

wishes it had bargained for."). The Court therefore finds that this factor weighs in

favor of enforcement.

### 4. Committed to Writing

The fourth *Winston* factor is whether the agreement is one usually committed

to writing, *Winston*, 777 F.2d at 80, and is often determined in light of the

agreement's complexity. *See, e.g., Ciaramella*, 131 F.3d at 326 ("We have also found

that the complexity of the underlying agreement is an indication of whether the

parties reasonably could have expected to bind themselves orally."); *Grgurev*, 2016

WL 6652741, at *7 ("Courts evaluate complexity by considering (1) the amount of

money at issue, (2) whether the terms of agreement will carry into perpetuity, and

(3) the length and complexity of the agreement itself.") (quotations omitted);

*Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC,* No. 04-CV-1621 (AJP), 2005 WL 1377853, at *9 (S.D.N.Y. June 9, 2005) ("[T]he correct question is whether the settlement agreement terms are sufficiently complex or involve long time periods, such that there should be a formal writing.").

The agreement in this case is complex in that it requires Carney to make installment payments to Plaintiffs, and create an LLC to effectuate an ERISA election, among other provisions. Conf. Tr. at 5-6. However, the Court questions how relevant the agreement's complexity is here, since the agreement was set forth in full and agreed to on the record by counsel and their clients. As such, an open-court oral agreement such as the one in this case is essentially analogous to an actual writing. *See Powell*, 497 F.3d at 131 ("Unlike in *Winston* and *Ciaramella*, . . . the terms of this agreement were announced on the record and assented to by the plaintiff in open court. . . . The significance of announcing the terms of an agreement on the record in open court is to ensure that there are at least 'some formal entries . . . to memorialize the critical litigation events,' and to perform a 'cautionary function' whereby the parties' acceptance is considered and deliberate. The in-court announcement here functioned in a manner akin to that of a memorializing writing.") (citations omitted); *Doe*, 2017 WL 1287144, at *8 ("Initially after *Winston*, the Court of Appeals for the Second Circuit evaluated the fourth factor primarily by assessing the complexity of the transaction and whether the settlement terms applied in perpetuity. But the fact that some of the material terms recited at the . . . conference apply in perpetuity is not dispositive, given that

courts in more recent cases have turned to the complexity of a transaction *after* determining that the agreement was not recited on the record.") (citations omitted, emphasis in original).  The transcript also provides a clear record of the terms and the parties' assent thereto in open court.  The Court accordingly finds that this factor weighs in favor of enforcement.[7]

* * *

In sum, the Court finds that the parties' oral agreement recited on the record at the March settlement conference satisfied all of the necessary elements of contract formation.  And, after a review of the *Winston* factors, the Court further finds that the parties intended their oral settlement at the conference to be binding absent a formal written agreement.

## D.    Defendants' Request For Attorneys' Fees

The settlement agreement states: "[T]he parties will work cooperatively and in good faith to draft a written settlement agreement within the next 60 days.  If a motion to enforce is brought concerning that agreement, whichever party brings that motion and prevails will be entitled to its reasonable attorneys' fees in bringing

---

[7]  The Court notes that, assuming N.Y. C.P.L.R. § 2104 applies here, the on-the-record settlement satisfies the statute.  *See* N.Y. C.P.L.R. § 2104 ("An agreement between parties or their attorneys relating to any matter in an action, *other than one made between counsel in open court*, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered.") (emphasis added); *see also, e.g., Powell v. Omnicom*, 497 F.3d at 129 n.2 ("Under New York law, the requirement that the settlement be on the record and in open court serves as a limited exception to the Statute of Frauds."); *Doe*, 2017 WL 1287144, at *4 ("[U]nder either New York or federal law, an oral settlement will be binding if it was made 'in open court,' that is, if it was formally memorialized in some way in the court's record."); *Oparah v. N.Y.C. Dep't of Educ.*, No. 12-CV-8347 (JGK) (SN), 2015 WL 4240733, at *9 (S.D.N.Y. July 10, 2015) ("Given the facts here—namely the court-supervised settlement and the recitation and acceptance of settlement terms on the record and in open court—I find that this matter is within the narrow category of cases to which Rule 2104's writing requirement need not apply.").

19

that motion." Conf. Tr. at 4-5. Plaintiffs argue that "Defendants[] should not be rewarded attorneys' fees for repudiating the agreement such that only the passage of time would warrant Defendants' request for Court intervention." Pl. Br. at 8. This argument is without merit because there has been no repudiation of the express terms of the agreement to date. But, in any event, the Court cannot grant Defendants' request for attorneys' fees, Def. Br. at 6-7, because they have not submitted contemporaneous billing records, which "are a prerequisite for attorney's fees in this Circuit." *N.Y.S. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983). Defendants' request accordingly is denied without prejudice.

## III.  CONCLUSION

For the reasons set forth above, Defendants' motion (Dkt. No. 43) is granted, and Plaintiffs' cross-motion (Dkt. No. 47) is denied.

Defendants' request for attorneys' fees is denied without prejudice. Defendants' counsel is to submit their fees motion with contemporaneous billing records by September 25, 2017.  On the same date, Defendants shall also submit a proposed settlement judgment detailing the terms set forth at the March conference.[8]  Plaintiffs shall have until October 5, 2017 to file any opposition to the request for attorneys' fees and to submit a counter judgment, if any.

**SO ORDERED.**

Dated: September 15, 2017
      New York, New York

                                   JAMES L. COTT
                                   United States Magistrate Judge

---

[8] The Court puts counsel on notice that it will not "clarify" anything beyond what was agreed to on the record, notwithstanding counsel's request to that effect.  *See* Defendants' Reply Brief at 7 (Dkt. No. 50).  Accordingly, counsel should not include a provision in the proposed judgment that Defendants owe no additional monies for the 2016 and 2017 MRCs and the excise tax, if any, resulting from Bluelink's failure to pay these MRCs.  If these matters become issues between the parties, they would properly be raised in state court as a breach of contract action, as they fall outside the purview of the enforcement of the settlement agreement before the Court.